**FILED**
**Mar 07, 2025**
**08:58 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT JACKSON

| | | |
|---|---|---|
| **CARLTON LUCIA, JR.,** | ) | **Docket No. 2020-07-0349** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 53823-2021** |
| **DSV SOLUTIONS, INC.,** | ) | |
| **Employer,** | ) | **Judge Robert Durham** |
| **And** | ) | |
| **VAN LINER INS. CO.,** | ) | |
| **Insurer.** | ) | |

---

## COMPENSATION ORDER FOR BENEFITS

---

This Court held a Compensation Hearing on February 27, 2025. The only issues were the date of maximum medical improvement and Mr. Lucia's permanent impairment rating.[1] For the reasons below, the Court accepts the maximum medical improvement date assigned by the authorized physician but the evaluating physician's impairment rating.

### History of Claim

On June 10, 2021, Mr. Lucia injured his right wrist while banging on a trailer door. His early diagnosis was a sprain, but when his symptoms failed to improve, his authorized physician, orthopedist Dr. Michael Dolan, determined that he had suffered a wrist fracture that caused one of his carpal bones to die. Dr. Dolan then performed a carpectomy, removing several of the bones in Mr. Lucia's wrist.

The carpectomy led to severe swelling and resulted in Mr. Lucia suffering from carpal tunnel syndrome. Dr. Dolan then performed a carpal tunnel release.

---

[1] DSV originally contested causation, since the authorized physician, Dr. Michael Dolan, ultimately determined that he could not say that Mr. Lucia's wrist fracture was primarily caused by the work incident. However, at trial, DSV agreed to causation, given Dr. Weisman's unequivocal testimony finding causation and Dr. Dolan's concession that if the incident did not cause the fracture but permanently worsened it.

Mr. Lucia testified he continues to experience significant problems with his right wrist and hand. Mr. Lucia showed the obvious indentation where the wrist bones had been removed. He demonstrated severe motion limitation, in that he could not extend his hand backwards at all and could only flex it forwards about 40 degrees. He was also only able to slightly bend his wrist from side to side. Mr. Lucia's hand was trembling as he fully exerted himself to show the loss of motion. He also demonstrated how his wrist would occasionally "lock up," making it totally immobile and requiring him to use his other hand to manipulate the wrist back in place.

Mr. Lucia testified that he has less than half the grip strength in his right hand that he had before the injury. He still experiences occasional pain and has lost the ability to manipulate small items with his fingers. Despite his injuries, Mr. Lucia never missed enough time from work to qualify for temporary disability benefits, and he testified that he is now making more money than before his injury. However, while he can still do his job, he must often use his left hand to compensate for his right, even though he is right-handed.

The parties introduced two doctor depositions on Mr. Lucia's permanent impairment under the AMA Guides to the Evaluation of Permanent Impairment, 6th edition.

First was Dr. James Weisman, a board-certified orthopedist who saw Mr. Lucia for an independent medical evaluation at his attorney's request. Dr. Weisman said that he first calculated the impairment from the carpectomy using both the diagnosis-based guidelines and the range of motion guidelines. Since the AMA Guides require using the higher impairment, he chose the range-of-motion method. Thus, he assigned a 10% impairment for the carpectomy.

Dr. Weisman next considered the carpal tunnel syndrome. He believed the AMA Guides provided a 3% impairment for the nerve entrapment, intermittent symptoms, motor conduction block, and decreased sensation. When he combined this impairment with the 10% from the carpectomy, the resulting impairment was 13%. Finally, he said Mr. Lucia reached maximum medical improvement on June 4, 2024, because that was the day he evaluated him.

The parties next introduced Dr. Dolan's deposition. Dr. Dolan acknowledged that Mr. Lucia suffered significant loss of motion after surgery and the AMA Guides recommended using active range-of-motion deficits if the calculated impairment were greater than that provided by the diagnosis-based evaluation. However, since he ultimately did not assess causation for Mr. Lucia's wrist injury, he did not calculate impairment.

When asked what the impairment would have been if he had determined the injury were compensable, Dr. Dolan said an impairment of 15% based on loss of motion would be "a good one to kind of look at," referring to page 473, Table 15-32, "all the way over in the corner." When pressed on cross-examination about his estimate of 15%, he said that,

based on Mr. Lucia's flexion and extension loss, it would be "roughly . . . somewhere close to that."

Dr. Dolan later agreed that Dr. Weisman's 10% impairment was "very reasonable" based on the range-of-motion method. He did not think it was "at all out of line." As for the carpal tunnel syndrome, Dr. Dolan maintained Mr. Lucia sustained a 0% impairment; however, he said "you can argue over it."

Finally, Dr. Dolan placed Mr. Lucia at maximum medical improvement on March 5, 2024, the date he last saw him.

## Findings of Fact and Conclusions of Law

Mr. Lucia has the burden of proving the essential elements of his workers' compensation claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2024). In this case, the parties agreed on all issues but two—Mr. Lucia's anatomic impairment from his work-related injury and the date he reached maximum medical improvement.

The Court first considers the correct impairment for Mr. Lucia's carpectomy. This case is unusual, in that DSV advocates that the Court use the opinion of Mr. Lucia's expert, Dr. Weisman, while Mr. Lucia insists that Dr. Dolan's impairment is correct. After carefully reviewing the testimony, the Court gives more weight to Dr. Weisman's opinion and finds that it overcomes the presumption afforded to Dr. Dolan's opinion under section 50-6-204(k)(7).

Mr. Lucia retained Dr. Weisman for an exam to not only address causation but also calculate his impairment rating. In his report and deposition, Dr. Weisman detailed his findings and the manner he used those findings to assess impairment. Dr. Weisman carefully calculated impairment for the carpectomy under both the diagnosis-based and range-of-motion models and then justified his decision to use range-of-motion to assess a 10% rating.

Dr. Dolan, on the other hand, had not given an impairment for the carpectomy before his deposition and so had not accurately measured loss of motion. He was also equivocal about the 15% impairment he quoted when pressed, saying that it would be "kind of good to look at" and it was "roughly somewhere close to that." He also agreed that Dr. Weisman's 10% impairment was "very reasonable" and "not at all out of line."

Finally, the part of Table 15-32 Dr. Dolan used when he speculated about a 15% impairment is about ankylosis, or complete loss of motion. According to page 469 of the AMA Guides, the listed angles used to calculate impairment in that section do not refer to loss of motion but to the angle of ankylosis. Thus, it would not apply to Mr. Lucia.

3

Given these factors, the Court finds that Dr. Weisman's opinion is more credible as to Mr. Lucia's anatomic impairment from the carpectomy and finds his impairment from that condition is 10%.

The question now becomes whether Mr. Lucia retains additional impairment from the carpal tunnel syndrome that resulted from the carpectomy. Mr. Lucia testified that in addition to his lost motion, he suffers from significant loss of grip strength, some numbness in his fingers, and difficulty manipulating small items. The Court finds Mr. Lucia was honest, candid, and forthright in his testimony, which was credible in all respects. When demonstrating his loss of motion, Mr. Lucia clearly gave maximum effort. The Supreme Court has consistently held that an employee's assessment about his own physical condition is competent testimony that is not to be disregarded. *Limberakis v. Pro-Tech Sec., Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *5-6 (Sept. 12, 2017).

Dr. Weisman specifically examined Mr. Lucia to calculate impairment, and he justified 3% in his report and deposition based on Mr. Lucia's continuing symptoms. The Court finds that Mr. Lucia's testimony is consistent with Dr. Weisman's impairment assessment for carpal tunnel syndrome.

In contrast, Dr. Dolan characterized the 3% impairment as "ridiculous," but gave little reason why Dr. Weisman was wrong or why the impairment was in fact 0%. In the end, he conceded that "you could argue" over the impairment.

Given the evidence, the Court finds that Dr. Weisman's impairment opinion, together with Mr. Lucia's testimony, is enough to overcome the presumption given to Dr. Dolan's. The Court finds that Mr. Lucia sustained a 3% impairment for his carpal tunnel syndrome. When combined with the 10% impairment for the carpectomy, the total impairment for Mr. Lucia's work injury is 13%.

As for the date of maximum medical improvement, it appears that Dr. Weisman assigned June 4, 2024, simply because that was the day he saw him. Dr. Dolan treated Mr. Lucia and was better acquainted with his progress. Thus, the Court gives more weight to Dr. Dolan's opinion and assigns a maximum medical improvement date of March 5, 2024.

Finally, Mr. Lucia filed a motion for discretionary costs for Dr. Weisman's deposition fee and court reporter expenses totaling $1,614.40. DSV did not object to the costs. Thus, the Court also awards Mr. Lucia $1,614.40 in discretionary costs.

IT IS, THEREFORE, ORDERED:

1. DSV shall pay Mr. Lucia an award of permanent partial disability benefits based on a 13% permanent medical impairment at the compensation rate of $685.56, or

$40,105.26.  DSV shall also pay Mr. Lucia $1,614.40 in discretionary costs for a total of $41,719.66.

2.  Mr. Lucia's counsel shall receive an attorney's fee of 20% of the award, or $8,021.05.

3.  Mr. Lucia reached maximum medical improvement on March 5, 2024.  His compensation period ends on April 19, 2025.

4.  DSV shall pay for reasonable, necessary, and related medical treatment for Mr. Lucia's work-related injury of June 10, 2021, with Dr. Michael Dolan remaining his authorized physician.

5.  DSV shall pay court costs of $150.00 to the Court Clerk within five business days of this order becoming final.

6.  DSV shall prepare and file with the Court Clerk a Statistical Data Form within 10 business days of the date this order becomes final.

7.  This Compensation Order is an adjudication on the merits.  Unless appealed, this order becomes final in 30 days.

**ENTERED March 7, 2025.**

_____
**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Dr. Weisman's deposition with attached records
2. Dr. Dolan's deposition with attached records
3. Mr. Hicks's affidavit

**CERTIFICATE OF SERVICE**

I certify that a copy of the Order was sent as indicated on March 7, 2025.

| Name | Certified Mail | Email | Service sent to: |
|------|----------------|-------|------------------|
| Charles Hicks | | X | Office@hickslawfirm.net |
| Kristen Stevenson | | X | kcstevenson@mijs.com |

_____
**PENNY SHRUM, Court Clerk**
WC.CourtClerk@tn.gov

6



<u>Right to Appeal:</u>

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____   ☐ Motion Order filed on _____

☐ Compensation Order filed on_____   ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*